IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| MAURICE TYREE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:14-cv-02114-STA-dkv |
| | ) | |
| OCWEN LOAN SERVICING, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is the motion for summary judgment of Defendants Ocwen Loan Servicing ("Ocwen") and U.S. Bank National Association, as trustee for Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR7 ("US Bank"), filed on August 15, 2016. (ECF No. 89.) Plaintiff Maurice Tyree has filed a response to the motion (ECF No. 95) and a motion to strike the motion for summary judgment.[1] (ECF No. 96.) Defendants have filed a reply to the response.[2] (ECF No. 99.) For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED**, and Plaintiff's motion to strike is **DENIED**.

Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

---

[1] The "motion to strike" appears to be another response to Defendants' motion for summary judgment.

[2] On October 17, 2016, Plaintiff filed a response to Defendants' reply. (ECF No. 100.) Because the response is both untimely and was filed without obtaining permission from the Court, the Court has not considered this filing in making its ruling.

1

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] When deciding a motion for summary judgment, the court must review all the evidence and draw all reasonable inferences in favor of the non-movant.[4] In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations or weigh the evidence."[5]

When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[6] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[7] The Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[8] The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."[9]

---

[3] Fed. R. Civ. P. 56(c).

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[5] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[8] *Id.* at 251 - 52.

As an initial matter, Plaintiff contends that Defendants did not file a separate statement of undisputed facts in support of their motion as required by Rule 56.1 of the Local Rules of this Court. Local Rule 56.1(a) requires that any motion for summary judgment be "accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial."[10] Plaintiff's contention is in error. Defendants did, in fact, file a separate statement of undisputed facts along with their motion for summary judgment.[11]

Plaintiff also objects to the affidavit from Gina Feezer submitted by Defendants. Plaintiff contends that Feezer is "not a competent fact witness" because she lacks personal knowledge of the matters she attests to.[12] To the contrary, Freezer's affidavit states that she is a senior loan analyst for Ocwen and is aware of its policies and procedures.[13] She testified that Ocwen has policies in place to make sure that it complies with the Fair Debt Collection Practices Act and those policies were in place at the time of the relevant events.[14] The Court finds that, as a

---

[9] *Celotex*, 477 U.S. at 322.

[10] Local Rule 56.1 provides, in part, as follows:

> (a) Moving Party. In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Fed. R. Civ. P. 56 shall be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record. If the movant contends that the opponent of the motion cannot produce evidence to create a genuine issue of material fact, the proponent shall affix to the memorandum copies of the precise portions of the record relied upon as evidence of this assertion.....

[11] (Defs' SOF, ECF No. 90.)

[12] (Pl's Mot. to Strike, ¶ 10, ECF No. 96); (Pl's Memo., ¶ 58, ECF No. 96-1.)

[13] (Feezer Aff., ¶¶ 1-4, ECF No. 89-10.)

[14] (*Id.*)

witness who was involved in the events underlying this case, Feezer may testify to the matters asserted in her affidavit.[15]

## Procedural History and Statement of Facts

Plaintiff filed this lawsuit for injunctive relief to rescind a nonjudicial foreclosure of real property located at 10025 Point Cove, Lakeland, Shelby County, Tennessee ("the Property"), and to enjoin Defendants from evicting him from the Property. He asserted a "robo-signing claim" and a Fair Debt Collection Practices Act ("FDCPA") claim.[16] Plaintiff filed his lawsuit in the Chancery Court for the Thirtieth Judicial District at Memphis, Tennessee, and Defendants removed the action to this Court with jurisdiction predicated on diversity of citizenship, 28 U.S.C. § 1332.[17]

On June 24, 2014, Plaintiff filed his first amended complaint, which Defendants moved to dismiss.[18] The motion to dismiss was granted as to Plaintiff's robo-signing claim but was denied as to Plaintiff's FDCPA claim.[19]

On July 9, 2015, Plaintiff filed a motion for leave to amend his complaint a second time.[20] That motion was denied on all claims except the following: (1) the Notice Letter violated

---

[15] *See Smith v. Pfizer Inc.,* 714 F. Supp. 2d 845, 852 (M.D. Tenn. 2010) ("[A]s a fact witness who was involved in the events underlying this case, McCormick is allowed to testify regarding her personal involvement in the drug application process and the opinions she held at that time. The defendants point out that her testimony involves her 'personal knowledge as to what evidence was considered by the FDA during the review process.'")

[16] (Compl., ECF No. 1-2.)

[17] (Notice of Removal, ECF No. 1-2).

[18] (1st Am. Compl., ECF No. 30).

[19] (Order, pp. 12-13, ECF No. 44.)

[20] (Mot. & Memo, ECF Nos. 59, 63.)

4

the FDCPA by failing to correctly identify the proper creditor; (2) the Notice Letter violated the FDCPA by informing Plaintiff that he had thirty days from the date of the letter to dispute the debt rather than thirty days from the date of receipt; and (3) Ocwen violated the FDCPA by failing to respond to Plaintiff's debt validation request.[21] Because the Court has allowed only those claims to proceed, Defendants are entitled to summary judgment on any new claims that Plaintiff has attempted to raise in his response to Defendants' motion for summary judgment on the ground that they are outside the scope of the second amended complaint.

Defendants have submitted the following statement of facts, and Plaintiff has not pointed to any evidence in the record to refute these facts.[22]

On September 25, 2006, Plaintiff executed a promissory note ("Note") payable to the lender Greenpoint Mortgage Funding, Inc., in the principal amount of $860,000. As security for the Note, on September 25, 2006, Plaintiff executed a Deed of Trust ("Deed of Trust") in favor of Mortgage Electronic Registrations Systems, Inc. ("MERS"), as nominee for the Lender and Lender's successors and assigns. The Deed of Trust granted a lien against the Property.[23]

In August 2011, Plaintiff fell behind on his mortgage payments. Plaintiff has not made a mortgage payment since that date. Following his default, Plaintiff sent several letters to his then-loan servicer requesting information about his loan. Plaintiff has maintained possession and use of the Property despite not having made a payment for five years.[24]

On February 16, 2013, Ocwen became the servicer of Plaintiff's loan. Ocwen informed

---

[21] (Order, ECF No. 72).

[22] Plaintiff's response to Defendants' statement of facts merely attempts to argue the law and make new claims or reassert claims already dismissed by the Court. (Pl's Memo. ECF No. 96-1.)

[23] (Defs' SOF, ¶¶ 1 – 4, ECF No. 90.)

[24] (*Id.* at ¶¶ 4 – 5.)

5

Plaintiff that it would be his new loan servicer by letter dated February 7, 2013 (the "Initial Contact Letter"). On February 16, 2013, Ocwen sent Plaintiff a letter and informed him that the total amount due as of the date of the letter was $949,187.66 (the "Notice Letter"). The Notice Letter identified the creditor of Plaintiff's loan as Aurora Loan Servicing. On April 9, 2013, Ocwen sent Plaintiff a letter informing him that, due to a computer error, the Notice Letter contained an error ("Correction Letter"). The Notice Letter incorrectly identified the creditor as Aurora Loan Services. The Correction Letter informed Plaintiff that the correct creditor was U.S. Bank National Association, as Trustee for Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR7. The Correction Letter informed Plaintiff that he could dispute the validity of the debt within thirty days of the date of the letter.[25]

In addition, Ocwen sent Plaintiff a letter on February 19, 2013, which enclosed a copy of his loan pay-off statement ("First Pay-off Statement"), in response to Plaintiff's previous request to GMAC, the prior servicer of the loan. Ocwen provided a second pay-off statement (the "Second Pay-off Statement") on February 25, 2013. On March 14, 2013, Ocwen responded to another request from Plaintiff and instructed him to contact foreclosure attorneys McCurdy & Candler for the most accurate payoff statement for his account. On April 3, 2013, Ocwen responded to another request from Plaintiff. It enclosed the responses sent on February 22 and March 14, 2013. During this time, Plaintiff's account remained delinquent.[26]

Analysis

Congress enacted the FDCPA in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt

---

[25] (*Id.* at ¶¶ 6-7.)

[26] (*Id.* at ¶¶ 7-11.)

collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."[27] "Congress designed the [FDCPA] to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" [28]

As noted above, Plaintiff has three claims remaining under the FDCPA. Defendants contend that they are entitled to summary judgment on those claims because the undisputed facts demonstrate that the misidentification of the servicer was a bona fide error, Plaintiff suffered no actual damages as a result of the Notice Letter, and Ocwen responded to Plaintiff's debt validation requests.

Misidentification of Creditor

Plaintiff contends that Ocwen misidentified the creditor of his loan in its Notice Letter in violation of 15 U.S.C. § 1692(a). Ocwen acknowledges its mistake but asserts that it is entitled to a bona fide error defense.

The FDCPA provides that, within five days of the initial communication, a debt collector shall send written notice to the debtor which includes the name of the creditor to whom the debt is owed.[29] If a mistake is made, the creditor is not liable "if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such

---

[27] 15 U.S.C. § 1692(e).

[28] *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 508 (6th Cir. 2007) (quoting *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir.1988) (quoting S.Rep. No. 95-382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699)).

[29] 15 U.S.C. § 1692g(a)(2).

error."[30] In order to qualify for the bona fide error defense, a debt collector must show that the violation was an unintentional mistake of fact and the debt collector maintained procedures reasonably adapted to avoid such an error.[31]

In this case, Defendants have presented evidence of an unintentional mistake of fact. Ocwen sent Plaintiff a letter on February 16, 2013, informing him that the creditor of his loan was Aurora Loan Services. However, the correct creditor of Plaintiff's loan was U.S. Bank. Ocwen sent Plaintiff a follow-up letter on April 9, 2013, stating that the creditor had been misidentified as the result of a computer error and identifying the correct creditor. Thus, once Ocwen identified the error, it corrected that error.

Additionally, as explained in the affidavit of Gina Feezer, this mistake was not a result of Ocwen's policies and procedures. Ocwen has policies and procedures in place to ensure that it complies with the FDCPA and that the borrower receives the correct information.[32] Plaintiff has not refuted Defendants' evidence. Accordingly, Ocwen is entitled to the bona fide error defense, and Plaintiff's 15 U.S.C. § 1692g(a) claim fails as a matter of law.

Notice Letter Violation

Next, Plaintiff claims that the Notice Letter incorrectly provided that he had thirty days

---

[30] 15 U.S.C. § 1692k(c).

[31] *See Jerman v. Carlisle, McNellie, Rini, Kramer, & Ulrich, LPA*, 559 U.S. 572 (2010) (holding that the bona fide error defense applies only to mistakes of fact and not to mistakes of law and § 1692k(c)'s requirement that debt collectors maintain procedures reasonably adapted to avoid any bona fide errors refers only to measures designed "to avoid errors like clerical or factual mistakes" and reversing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 478 (6th Cir. 2008), which held that the bona fide error defense applied to a violation resulting from an attorney's mistaken legal conclusion regarding an FDCPA requirement).

[32] (Feezer Aff., ¶¶ 3-6, ECF No. 89-10.)

from the date of the letter, rather than thirty days from receipt, in which to validate the debt.[33]  A plaintiff who brings a claim under this section is entitled to: (1) any actual damage that he sustained; (2) any additional damages that the Court would award, not to exceed $1,000; and (3) reasonable attorney's fees.[34]  Defendants contend that, even if Ocwen violated the FDCPA in the Notice Letter, they are still entitled to summary judgment because Plaintiff has not suffered any actual damages and is not entitled to attorney's fees.

In support of their argument, Defendants point out that the foreclosure of Plaintiff's home was not the result of the letter from Ocwen.  By the time Ocwen became the servicer of the loan in February 2013, Plaintiff had not made a payment since September 2011.  Thus, the foreclosure that ultimately occurred was the result of Plaintiff's failure to make a payment for nearly eighteen months.  In addition, as shown by the correspondence between Plaintiff and Ocwen, Plaintiff inquired about the validity of his debt after he received the Notice Letter.  He also received multiple copies of pay-off statements from February through April 2013.  However, he took no action to cure his default after receiving these pay-off statements.  Accordingly, any violation of the FDCPA was not the cause of the foreclosure.

Defendants additionally argue that Plaintiff's claims that he suffered emotional damages as a result of Defendants' conduct are conclusory and unsupported by the evidence.  Plaintiff's medical records show that he has suffered from depression since 2008, five years before Ocwen became the servicer of Plaintiff's loan and before he received the Notice Letter.[35]  Plaintiff's

---

[33] *See* 15 U.S.C. § 1692g(a) (requiring a debt collector to provide to the debtor "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector").

[34] 15 U.S.C. § 1692k(a).

[35] (Med. Rec., ECF No. 92.)

9

depression, therefore, cannot be attributed to any conduct by Ocwen, and he is not entitled to damages for that depression. Further, the medical records do not support any of Plaintiff's other claims for emotional distress.

"Generally, the FDCPA permits recovery of actual damages for emotional distress."[36] However, a Court "must only award emotional damages for actual, serious emotional distress traceable to proscribed debt collection practices."[37] That is because "debt collection ... is an inherently stressful experience for the consumer," and the FDCPA was intended to deter only abusive and unlawful debt collection practices.[38] Conclusory allegations, such as those in the present case, are not sufficient to support an award of damages for emotional distress.[39]

An award of attorney's fees to a prevailing plaintiff is not authorized under 15 U.S.C. § 1692k(a)(3) if the plaintiff appeared pro se.[40] Consequently, Plaintiff cannot collect attorney's fees on this claim even if he prevailed.

---

[36] *Davis v. Creditors Interchange Receivable Management, LLC*, 585 F. Supp.2d 968, 971 (N.D. Ohio 2008).

[37] *Id.*

[38] *Id.*

[39] *See* S*antacruz v. Standley & Associates*, LLC, 2011 WL 1043338 at *6 (D. Colo. Mar. 17, 2011). *See also Midland Funding, LLC v. Brent*, 2010 WL 4628593 at *7 (N.D. Ohio Nov. 4, 2010) (finding that the debtor had offered no evidence tying her emotional distress to the alleged unlawful conduct of the debt collector; instead, the emotional distress the debtor "claims to have suffered appears to have been due to nothing more than the embarrassment and inconvenience which are the natural consequences of debt collection...." (internal quotation omitted)).

[40] *See Strange v. Wexler,* 796 F. Supp. 1117, 1120 (N.D. Ill. 1992) ("The reasoning of cases denying attorney's fees to a pro se plaintiff under 42 U.S.C. § 1988—that Congress intended to enable plaintiffs to employ counsel, rather than add an additional element of compensation—is also applicable here." (citing *Kay v. Ehrler*, 499 U.S. 432 (1991); *Chowaniec v. Arlington Park Race Track, Ltd.,* 934 F.2d 128 (7th Cir. 1991); *Demarest v. Manspeaker*, 948 F.2d 655 (10th Cir. 1991) *cert. denied*, 503 U.S. 921 (1992) (denying fees to pro se plaintiff under the Equal Access to Justice Act))).

Because Plaintiff can prove no damages traceable to Defendants' conduct and is not entitled to attorney's fees, Defendants are entitled to judgment as a matter of law.

Debt Validation Requests

Finally, Plaintiff has alleged that he did not receive any information from Ocwen that validated or verified the debt in violation of 15 U.S.C. § 1692g(b). When a consumer notifies a debt collector in writing of a dispute over a debt, as Plaintiff did, the debt collector is required to

> cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.[41]

In *Rudek v. Frederick J. Hanna & Associates, P.C.*, 2009 WL 385804 (E.D. Tenn. Feb. 17, 2009), the Court addressed the issue of whether a debt collector had complied with the verification requirements of § 1692g, stating in pertinent part:

> The Sixth Circuit has not addressed what constitutes appropriate verification. But other courts have held that the verification provided here—confirmation of the debt, which is then relayed to the debtor—is sufficient. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) ("[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt."); *Ducrest v. Alco Collections*, 931 F. Supp. 459, 462 (M.D. La. 1996) (holding debt collector can rely on its clients' representation and has no duty to independently investigate claims); *Azar v. Hayter*, 874 F. Supp. 1314, 1317 (N.D. Fla. 1994), *aff'd without opinion*, 66 F.3d 342 (11th Cir. 1995) (The FDCPA does not "require a debt collector independently to investigate the merit of the debt, except to obtain verification, or to investigate the accounting principles of the creditor, or to keep detailed files."); accord *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1174 (9th Cir. 2006); *Anderson v. Frederick J. Hanna & Assocs.,* 361 F. Supp.2d 1379, 1383 (N.D. Ga. 2005).[42]

---

[41] 15 U.S.C. § 1692g(b).

[42] *Rudek*, 2009 WL 385804 at *2.

In *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777 (6th Cir. 2014), the Sixth Circuit quoted with approval the Fourth Circuit's definition in *Chaudhry v. Gallerizzo*, which had been cited by *Rudek*:

> [V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt. *See Azar v. Hayter*, 784 F. Supp. 1314, 1317 (N.D. Fla.), *aff'd*, 66 F.3d 342 (11th Cir.1995), *cert. denied*, 516 U.S. 1048 (1996). Consistent with the legislative history, verification is only intended to "eliminate the ... problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95–382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699. There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.[43]

After reviewing other cases, the *Haddad* court observed that the baseline for verification, which "depends on the facts of a particular situation, is information that enables the consumer to sufficiently dispute the payment obligation."[44]

In the present case, the record shows that Plaintiff was provided with information that enabled him to sufficiently dispute the payment obligation. Ocwen provided multiple loan verification statements and responded to Plaintiff's requests. Ocwen provided Plaintiff with an itemized payoff statement that provided him with the principal balance, interest owed, escrow funds due, late fees, and other fees and costs on February 18, 2013, and provided him with a second statement on February 25, 2013.[45] Ocwen again responded to Plaintiff's requests by letter dated March 14, 2013, instructing him to contact foreclosure attorneys McCurdy &

---

[43] *Haddad*, 7589 F.3d at 783 (quoting *Chaudhry*, 174 F.3d at 406).

[44] *Id.* at 785.

[45] (Defs' Mot. Summ. J., Ex. 5 & Ex. 6, ECF Nos. 89-5, 89-6.)

Candler for the most accurate payoff statement for his account.[46] On April 3, 2013, Ocwen responded to another request from Plaintiff and enclosed the responses sent on February 22 and March 14, 2013.[47]

Because Ocwen responded to Plaintiff's debt validation request with multiple itemized statements that provided him with verification of the debt, Defendants are entitled to summary judgment on Plaintiff's 15 U.S.C. § 1692g(b) claim that Ocwen failed to respond to his debt validations requests.

## Conclusion

The undisputed evidence in the record shows that there is no genuine issue of material fact regarding Plaintiff's remaining FDCPA claims. Therefore, Defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: October 21, 2016.

---

[46] (*Id.* at Ex. 7, ECF No. 89-7.)

[47] (*Id.* at Ex. 9, ECF No. 89-9.)